UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

American Civil Liberties Union
Foundation of New Hampshire

                    v.                              Civil No. 19-cv-977-LM
                                                    Opinion No. 2022 DNH 018 P
United States Customs and
Border Protection

## O R D E R

The American Civil Liberties Union Foundation of New Hampshire ("ACLU")

brings this suit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"),

challenging the United States Custom and Border Protection's ("CBP") refusal to

disclose certain documents and information that it requested pursuant to that

statute.  Presently before the court is the ACLU's "Motion to Compel Defendant

CBP to Produce Adequate Vaughn Index" (doc. no. 16).  CBP objects, and the ACLU

filed a reply.  For the following reasons, the court grants the ACLU's motion in part

and denies it in part.

## BACKGROUND

The ACLU seeks records concerning CBP's immigration patrol operations in

New Hampshire.  It alleges that CBP has engaged in aggressive immigration

enforcement actions far from the Canadian border.  The ACLU thus argues that the

requested records "would facilitate the public's understanding of how CBP enforces

immigration laws in New Hampshire," and that such information is critical to the public's ability to hold the government accountable.  Id. at 1-2.

The ACLU asserts that CBP uses both checkpoints and roving patrol operations to enforce immigration laws.  As to checkpoints, the ACLU alleges that CBP had recently used checkpoints on at least eight occasions almost 100 miles from the Canadian border.  CBP's checkpoint operations are presently the subject of a separate lawsuit.  See Drewniak v. U.S. CBP, 20-cv-852-LM (alleging CBP's warrantless checkpoints are unreasonable under the Fourth Amendment).

The present lawsuit deals with information concerning roving patrol operations that do not take place at checkpoints.  To illustrate the alleged issue, the ACLU describes two instances of noncitizens who were followed, approached, and ultimately arrested by plainclothes Border Patrol[1] agents.  For example, the ACLU alleges that in March 2019, two plainclothes Border Patrol agents in an unmarked vehicle trailed a man named Florentin Avila Lucas, followed him into a thrift store and then back outside into the parking lot, then pushed him to the ground, handcuffed him, and took him into custody.  Doc. no. 7 at 4-5.  This incident, the ACLU states, took place nearly 100 miles from the Canadian border.  Similarly, the ACLU describes an April 2019 incident in which a man and his family were eating lunch in Littleton, NH—nearly 65 miles from the border—and two plainclothes

---

[1] The United States Border Patrol is the mobile, uniformed arm of CBP.  See What is the Border Patrol and what is its mission?, https://www.cbp.gov/faqs/what-border-patrol-and-what-its-mission (last visited Feb. 1, 2022).

agents in an unmarked vehicle put the man into the vehicle in front of his wife and children.  Id. at 7.

Seeking information about these enforcement actions, the ACLU submitted two FOIA requests to CBP.  The first, submitted on March 25, 2019, requested "records about [CBP's] non-checkpoint patrol operations conducted in New Hampshire to surveil and arrest undocumented and documented immigrants."  Doc. no. 7-1 at 1.  The request then went on to delineate specific categories of records under this umbrella that it sought.  Id. at 2.  Then, on October 17, 2019, the ACLU submitted a supplemental FOIA request to CBP.  Doc. no. 7-2.  That request also sought information concerning "non-checkpoint patrol operations conducted in New Hampshire."  Id. at 1.  It included a list of specific categories of documents, which referred to documents pertaining to "roving patrol operations."  Id. at 3.

In response, CBP produced documents on December 6, 2019 and April 8, 2020.  Among those documents were 108 I-213 forms.  An I-213 is a record—similar to a police report—that details the arrest of a noncitizen, including "the circumstances of the arrest . . . the name, alien number, address, date of birth, photograph, fingerprints, criminal and immigration history, and other information about the arrestee."  Union Leader Corp. v. U.S. Dep't of Homeland Sec., 749 F.3d 45, 48 n.2 (1st Cir. 2014).  CBP produced only the first page of each I-213.

The ACLU initially filed suit to enforce its FOIA request on September 17, 2019.  On December 16, 2019, the ACLU amended its complaint to include information about its supplemental FOIA request.

3

During the course of litigation, counsel for the parties met and conferred regarding the scope of the ACLU's demand for information relating to the I-213s. Doc. no. 21-1 at 4.  As a result of those discussions, CBP agreed to supplement its productions with more I-213 information.  On January 12, 2021, CBP produced the subsequent pages—with redactions—for 14 of the I-213s.  For the other 94 I-213s, however, CBP provided no additional information, and no explanation of why it was not producing those documents.

On May 14, 2021, CBP produced three <u>Vaughn</u> indexes containing the names of the documents partially or fully withheld, the number of pages of each document, the claimed exemptions, and a description of the material withheld.  The three indexes included a Partial Redaction Production Index, a Partial Redaction Supplemental Production Index, and a Withheld in Full Production Index.  Among other documents, the Withheld in Full index listed eight Operations Order Reports that were withheld in full.

The ACLU viewed these indexes as insufficient and wrote CBP two letters detailing its concerns.  The ACLU's first letter detailed three concerns: (1) the indexes did not explain why CBP withheld the full pages of 94 of the I-213s; (2) even for the 14 I-213s that CBP more fully produced, CBP failed to explain its efforts to segregate non-exempt information from purportedly exempt information; and (3) CBP withheld the eight Operation Order Reports in full without explaining any efforts to segregate the documents.  In its second letter, the ACLU asserted that CBP had previously provided a partially redacted Operation Order Report in an

unrelated FOIA lawsuit, which demonstrated that at least portions of the Operation Order Reports at issue here could be released.  The ACLU attached the sample Operation Order Report from the unrelated lawsuit to its letter.

The ACLU asserts that this dispute remains unresolved and therefore files the instant motion to compel CBP to supplement its indexes.

## DISCUSSION

FOIA requires federal agencies to make their records available to any person upon request.  5 U.S.C. § 552.  The law was "'enacted to facilitate public access to Government documents' and 'designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  Union Leader, 749 F.3d at 49-50 (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).  Public access serves "to ensure an informed citizenry, vital to the functioning of a democratic society."  Church of Scientology Int'l. v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994) (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)).  In essence, FOIA furthers "the rights of citizens to know 'what their government is up to.'"  Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 437 (1st Cir. 2006) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989)).

The statute's "right of access is not absolute, however, as FOIA exempts certain categories of materials from disclosure in order to effectuate the goals of the FOIA while safeguarding the efficient administration of the government."  Union Leader, 749 F.3d at 50.  FOIA contains nine exemptions, which "are to be construed

narrowly, with any doubts resolved in favor of disclosure." Carpenter, 470 F.3d at 438. "FOIA further mandates that 'any reasonably segregable portion of a record shall be provided to any person requesting such records after deletion of the portions which are exempt . . . .'" Id. at 442 (quoting 5 U.S.C. §552(b)). "Non-exempt information or materials may be withheld only where it 'is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden.'" Id. (quoting Church of Scientology, 30 F.3d at 228)). "The government bears the burden of demonstrating the applicability of a claimed exemption." Union Leader, 749 F.3d at 50.

"To provide for the broadest possible disclosure and further the adversary process, courts often require the withholding agency to provide a 'Vaughn' index." Carpenter, 470 F.3d at 442. These indexes derive their name from the seminal D.C. Circuit case, Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). "Generally, a Vaughn index provides a broad description of the requested material or information, and the agency's reason for withholding each document or portion of a document." Carpenter, 470 U.S. at 442. A Vaughn index serves three functions:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

Church of Scientology, 30 F.3d at 228 (quoting Maynard v. CIA, 986 F.2d 547, 557 (1st Cir. 1993)). Although there is "no set formula for a Vaughn index," it "must be sufficiently detailed to permit the trial court and requester to obtain a 'clear

explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" Manna v. U.S. Dep't of Justice, 832 F. Supp. 866, 873 (D.N.J. 1993).

Here, the ACLU alleges that the CBP's Vaughn indexes are deficient because they do not explain: (1) why 94 of the I-213s were missing full pages, (2) whether and how CBP made efforts to segregate non-exempt information from purportedly exempt information on the narrative sections of the 14 remaining I-213s, and (3) whether and how CBP made efforts to segregate non-exempt information from purportedly exempt information on the Operation Order Reports that CBP is withholding in full.  CBP objects and contends that its Vaughn indexes are adequate.  The court analyzes each of the ACLU's arguments in turn.

I.    94 I-213s missing full pages

First, the ACLU argues that the indexes are deficient because they do not explain why CBP has withheld everything but the first page for 94 of the I-213s.  In response, CBP argues that the 94 I-213s are not responsive to the ACLU's requests, and thus are not required to be included in the Vaughn indexes at all.  Specifically, CBP attached to its objection the declaration of Patrick Howard, the Branch Chief within the FOIA division at CBP, stating that CBP initially disclosed the first pages of these documents, but "after additional review," CBP determined they were non-responsive because "they did not pertain to roving patrol operations conducted in New Hampshire."  Doc. no. 21-1 at 4.  In its reply brief, the ACLU calls into

question CBP's determination that the documents are not responsive because (1) CBP initially produced the I-213s and then appeared to change its mind about whether they were responsive, and (2) Howard's declaration evinces an unduly narrow interpretation of the ACLU's request.

As an initial matter, CBP contends that the ACLU's argument goes to the adequacy of CBP's search for responsive documents, rather than to the sufficiency of the <u>Vaughn</u> indexes, and thus is best addressed at summary judgment.  The ACLU argues that the issue is ripe, and thus the court should address it now in the interest of judicial economy.  The court agrees with the ACLU and addresses the dispute on the merits.

Agencies need not produce documents that are "non-responsive" to a FOIA request.  <u>See</u> Competitive Enter. Inst. v. U.S. EPA, 12 F. Supp. 3d 100, 114 (D.D.C. 2014).  Agencies have a duty, however, to construe FOIA requests liberally.  <u>See</u> 5 U.S.C. § 552(a)(3)(A) (agencies shall disclose records that the request "reasonably describes"); Inst. for Just. v. IRS, 941 F.3d 567, 572 (D.C. Cir. 2019) (congressional intent shows requests should be construed liberally).  "[T]he adequacy of an agency's search for [responsive] documents under FOIA is judged by a standard of reasonableness."  Church of Scientology, 30 F.3d at 230.  Courts take pause "where the agency's responses raise serious doubts as to the completeness of the search."  ACLU v. FBI, No. 12-3728, 2013 WL 3346845, at *3 (N.D. Cal. July 1, 2013) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).

If a document is not responsive, an agency has no duty to include it in its Vaughn index at all.  See Competitive Enter. Inst., 12 F. Supp. 3d at 114.  The mere fact that an agency initially does so erroneously, and then changes its mind, does not alone call into question whether the document was properly withheld.  See Flores v. U.S. Dep't of Justice, 391 F. Supp. 3d 353, 365 (S.D.N.Y. 2019); Competitive Enter. Inst., 12 F. Supp. 3d at 114.

For example, in Flores v. U.S. Department of Justice, the agency initially included certain documents in the Vaughn index but labeled them nonresponsive and did not disclose them.  391 F. Supp. 3d at 365.  The agency explained that it included them in the index—even though it later determined they were nonresponsive—because removing them from the index would have caused gaps in the numbering system.  Id. 365 n.8.  The court ruled that that initial inclusion did not require the release of the records or any further justification of their withholding.  Id. at 365; see also Competitive Enter. Inst., 12 F. Supp. 3d at 114 (agency's inclusion of non-responsive documents in its Vaughn index was "an abundance of caution that border[ed] on confusion" but inclusion in the index did not require any further justification of their withholding).

Here, the fact that CBP initially produced the 94 I-213s and then changed its mind about whether they were responsive does not—in isolation—call into question CBP's ultimate determination that the documents are not responsive.  Howard's declaration states that CBP initially provided the first page of 108 I-213s.  During the course of litigation, counsel conferred regarding the scope of the ACLU's request

for information relating to the I-213s, and CBP agreed to supplement its productions.  CBP then conducted an "additional review" of the 108 I-213s it had previously produced.  Doc. no. 21-1 at 4.  It determined that 14 of those I-213s were responsive, but that 94 of them were not responsive.  CBP's about-face is analogous to those of the agencies in Competitive Enterprise and Flores.  The change of course during the "additional review" alone does not justify requiring CBP to turn over these purportedly nonresponsive I-213s.

The ACLU's next concern is that CBP has construed its request too narrowly.  The ACLU requested information concerning "CBP's non-checkpoint patrol operations in the State of New Hampshire."  Doc. no. 7-1 at 8.[2]  Howard's declaration asserts that the 94 I-213s in question were determined to be unresponsive because they "did not pertain to roving patrol operations in New Hampshire."  Doc. no. 21-1 at 4.  The ACLU contends that Howard's reference to "roving patrol" is too narrow an interpretation of its request for "non-checkpoint patrol."

In cases where the agency's response raised questions about whether specific documents an agency claimed to be nonresponsive were in fact so, courts have requested that the agency submit a supplemental declaration, permitted in camera review, or both.  See Dunaway v. Webster, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981); ACLU v. FBI, 2013 WL 3346845, at *3.  For example, in Dunaway v. Webster, an

---

[2] In its second request, the ACLU requested records about CBP's "non-checkpoint patrol operations conducted in New Hampshire" and later specified certain documents pertaining to "roving patrol operations."  Doc. no. 7-2 at 2-3.

agency withheld various material on the ground that it did not fall within the scope of the plaintiff's request. 519 F. Supp. at 1083. The court reviewed in camera the documents at issue and determined that some material was improperly withheld. Id.

Similarly, in ACLU v. FBI, one of the agencies redacted certain topics as non-responsive. 2013 WL 3346845, at *10. The court noted that given the purpose of FOIA and the strong presumption in favor of disclosure, it would review certain non-responsive redactions to ensure they were "utterly unrelated to the subject of the plaintiff's request." Id. at *10-11 (citing Dunaway, 519 F. Supp. at 1083). With respect to a different set of documents, the court ruled that the plaintiff validly called into question the adequacy of the search. Id. at *4. The court therefore ordered that the FBI provide a supplemental declaration addressing the court's concerns. Id. at *5.

In contrast, in Leopold v. CIA, the plaintiff contested the adequacy of the agency's search, but the court declined to require a supplemental declaration or conduct in camera review, rejecting the plaintiff's argument that the agency had construed the request too narrowly. 177 F. Supp. 3d 479, 487 (D.D.C. 2016). There, the plaintiff requested "all written agreements and correspondence" between two agencies. Id. The agency employee's declaration appeared to omit "written agreements" in describing its search efforts; it referred only to "correspondence." Id. The court found that the declaration—when read in context—was simply the agency's attempt to provide a condensed summary of its search efforts. Id. at 488.

Further, the agency submitted a supplemental declaration on its own accord, confirming that original declaration was merely a summary, and any omissions in the wording of the first declaration did not indicate a narrowing of the plaintiff's request.  Id.  In addition, the plaintiff attempted to call into question the agency's determinations of nonresponsiveness.  Id. at 490.  The court contrasted Dunaway and ACLU v. FBI, stating that in those cases, certain documents claimed to be unresponsive were already before the court and thus in camera review was reasonable, whereas in Leopold there were no allegedly nonresponsive documents before the court.  Id.  The court thus declined to require more detailed explanations. Id.

Here, the court finds that the ACLU has raised a reasonable concern about whether the 94 I-213s are responsive to its request.  Although the fact that the documents were initially produced does not alone call into question the adequacy of the search, that issue coupled with the language of Howard's declaration raise a reasonable concern.  Like the documents at issue in Dunaway and the first set of documents in ACLU v. FBI, the contested items here are a discrete list of documents that are already before the court, and thus it should be of minimal burden to CBP to file a supplemental affidavit detailing its process and reasoning. With respect to the wording of Howard's declaration, it could turn out that it was simply an innocuous rewording of the ACLU's request—like that in Leopold.  But given FOIA's "strong presumption in favor of disclosure," Ray, 502 U.S. at 173, requiring a supplemental declaration enables the adversarial system to operate by

giving the requester as much information as possible.  See Church of Scientology, 30 F.3d at 228.

The court thus orders CBP to file a supplemental declaration regarding these 94 I-213s.  CBP should address (1) why the agency initially turned over the documents but then determined after "additional review" that they were not responsive, and (2) whether the agency searched for the broader "non-checkpoint patrol operations" that the ACLU requested, and not just the arguably narrower "roving patrol operations" referenced in Howard's declaration.


II.    <u>14 redacted I-213s</u>

Next, the ACLU argues that for the 14 remaining I-213s, the indexes do not explain whether and how CBP made efforts to segregate purportedly exempt from non-exempt information.  For each of these 14 forms, the narrative section is heavily redacted.  For example, File 52(1) reads: "On [redacted] Border Patrol Agents [redacted] and [redacted] . . . ."  At least thirteen lines of redacted text follow that uninformative statement.  After that portion, the form states that agents "approached the subjects, identified themselves as Border Patrol Agents, and questioned them as to their citizenship."  Doc. no. 16-6 at 72.  Given these redactions, there is no information about how and why Border Patrol Agents singled out the subjects.  For the other I-213s, too, CBP heavily redacted the portion of the narrative sections describing what indications led Border Patrol Agents to make contact with subjects.  In each of these instances, CBP claims the redactions fall

into Exemptions 6, 7(C), and 7(E).[3]  The ACLU argues that CBP must revise its indexes to describe whether and how it made efforts to segregate this redacted information.

In its opposition, CBP cited Howard's declaration which detailed how CBP performs the segregability analysis.  Howard stated that a CBP FOIA processor "(1) meticulously examine[s], line-by-line, each responsive page to identify potential redactions, (2) appl[ies] redactions (if necessary), and (3) individually label[s] each redaction (which could be a name, email address or phone number, a single word or phrase, or substantial portions of a document), with the applicable exemption or exemptions."  Doc. no. 21-1 ¶ 7.  CBP thus argues that it did exactly what the law requires: it explained how it performed the segregability analysis, and the <u>Vaughn</u> indexes asserted which exemptions applied to each portion of redacted material.

In its reply brief, the ACLU did not respond to CBP's position or otherwise detail why CBP's explanation is inadequate.  It is thus unclear whether the ACLU believes that Howard's declaration satisfies its concerns.

A <u>Vaughn</u> index "must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those

---

[3] Exemption 6 pertains to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  § 552(b)(6).  Exemption 7(C) covers law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  § 552(b)(7)(C).  Finally, Exemption 7(E) is for law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  § 552(b)(7)(E).

claims with the particular part of a withheld document to which they apply."
Church of Scientology, 30 F.3d at 231 (cleaned up).  To determine whether a
Vaughn index is adequate, the question is whether it "affords the FOIA requester a
meaningful opportunity to contest, and the district court an adequate foundation to
review, the soundness of the withholding."  Id. (cleaned up).  Courts look not only at
the Vaughn indexes themselves, but also at affidavits by agency employees
detailing the redaction process.  See Mead Data Central, Inc. v. U.S. Dep't of Air
Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

   For example, in Johnson v. Exec. Office for U.S. Att'ys, the plaintiff argued
that a Vaughn index was inadequate because it provided an insufficient
justification for its claim that none of the withheld documents could reasonably be
segregated for release.  310 F.3d 771, 776 (D.C. Cir. 2002).  The court disagreed.  Id.
The court noted that the agency had provided a comprehensive Vaughn index,
describing each document withheld and the applicable exemptions.  Id.  In addition,
the agency submitted a supplemental affidavit by an agency attorney, asserting
that she "personally conducted a line-by-line review of each document withheld in
full and determined that 'no documents contained releasable information which
could be reasonably segregated from the nonreleasable portions.'"  Id.  The court
held that the combination of the Vaughn index and the agency attorney affidavits
was sufficient to fulfill the agency's obligation to show with "reasonable specificity"
why the relevant documents could not be further segregated.  Id.; see also Loving v.
Dep't of Def., 550 F.3d 32, 41 (D.C. Cir. 2008); Muttitt v. Dep't of State, 926 F. Supp.

2d 284, 302 (D.D.C. 2013) ("[A]n agency may satisfy its segregability obligations by (1) providing a Vaughn index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.").

Here, like in Johnson, the combination of the Vaughn index and the agency affidavit provides a sufficiently "detailed justification" specifying why the claimed exemptions are relevant and correlating those claims with particular parts of the documents. Church of Scientology, 30 F.3d at 231. Howard's declaration explains CBP's process for examining documents line-by-line to determine what information is segregable. Doc. no. 21-1 at ¶ 7. Moreover, the indexes themselves describe why the redacted information purportedly falls into the claimed exemptions. For example, the indexes assert that Exemption 7(E)—which covers law enforcement records that, if disclosed, could help individuals circumvent the law—applies to the procedures and methods CBP uses to target individuals. CBP asserts that the exemption also applies to operation locations, because Border Patrol could be conducting patrol operations in the same locations in the future.

The court thus finds that the Vaughn index is "sufficiently detailed to permit the trial court and requester to obtain a 'clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" Manna, 832 F. Supp. at 873. CBP has detailed why it believes certain information is exempted, and that justification is detailed enough that it affords ACLU an opportunity to contest whether the information is, in fact, exempted. Because this information is

sufficient to allow the adversarial process to function, the court sees "nothing to be gained from requiring more detail." Church of Scientology, 30 F.3d at 233. Whether CBP's determinations of exempted material are overbroad is another matter, but one which is reserved for summary judgment.[4]

III.   Eight Operation Order Reports withheld in full

Finally, the ACLU argues that the indexes do not explain whether and how CBP made efforts to segregate information on the eight Operation Order Reports that it has withheld in full.  The ACLU attaches to its motion a sample Operation Order Report dated 2006 that was produced by CBP in an ACLU affiliate's FOIA lawsuit; in that sample, CBP disclosed a substantial amount of information, whereas here the Operation Order Reports were withheld in full.  The ACLU argues this discrepancy calls into question whether CBP made efforts to segregate the information in the Operation Order Reports at issue in this case.

In response, CBP cites Howard's declaration, stating that each page of the Operation Order Reports was "meticulously examined," and that CBP has determined that they must be withheld in full.  Doc. no. 21 at 6.  Howard's

---

[4] The ACLU also attached to its motion a sample I-213—obtained through an ACLU affiliate's lawsuit—dated 2011 and describing the stop and detention of a noncitizen in California.  In the sample, the narrative section is much less heavily redacted than in those produced here.  The ACLU calls into question CBP's redactions here on the basis of the I-213 it obtained in the other lawsuit.

The ACLU has not asserted how the sample I-213 undercuts the adequacy of the Vaughn indexes.  Rather, the ACLU's argument appears to go to the applicability of the claimed exemptions.  The parties agree that the latter concern will be addressed at summary judgment.

declaration also states that this decision "was made after careful review and individualized assessment of the contents of each of the Operations Orders." Doc. no. 21-1 ¶ 9. This is in addition to the general statement—cited previously—that when a CBP FOIA processor reviews records in connection with a FOIA request, the processor "meticulously examine[s], line-by-line, each responsive page to identify potential redactions." Id. ¶ 7. As to the Operation Order Reports disclosed in an unrelated case, CBP argues that its disclosure of a redacted Operations Order Report from Arizona more than a decade ago in a factually distinguishable case, is irrelevant to the Operations Order Reports at issue here.

Similar to the ACLU's concern about the 14 partially redacted I-213s, the court finds that the Vaughn index, combined with Howard's declaration, adequately fulfills CBP's segregability obligations with respect to the Operations Order Reports. See Loving, 550 F.3d at 41; Johnson, 310 F.3d at 776; Muttitt, 926 F. Supp. 2d at 302. Further, the court agrees with the government that the fact that CBP disclosed an Operations Order Report in an unrelated case in a different jurisdiction more than a decade ago does not alone cast doubt on the adequacy of CBP's segregability determinations in this case.

## CONCLUSION

The court grants in part and denies in part the ACLU's motion for an adequate Vaughn index (doc. no. 16). The court orders that by March 21, 2022, CBP

shall supplement its declaration with respect to the 94 I-213s (as to which only the first page was disclosed) in a manner consistent with this order.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 22, 2022

cc:  Counsel of Record